**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| MUROLET IP LLC a/k/a MUROLET, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SCHINDLER HOLDING LTD, a/k/a SCHINDLER GROUP, AG, <br><br> Defendant. | Case No. 6:20-cv-01011-ADA |

**NON-PARTY SCHINDLER ELEVATOR CORPORATION'S OPPOSED MOTION TO
DISQUALIFY PLAINTIFF'S COUNSEL GOLDBERG SEGALLA**

## I.  INTRODUCTION

More than a year ago, Schindler Elevator Corporation ("SEC") engaged Goldberg Segalla to represent it with respect to a litigation in New York state court.  While that matter was pending, other Goldberg Segalla attorneys filed the instant lawsuit attempting to sue SEC's foreign corporate parent for patent infringement.  The original complaint in this case alleged that the Schindler 7000 elevator systems with PORT technology ("Accused Products") infringed the patents.  SEC is the entity that markets and sells the Accused Products in the United States, and the patent infringement allegations in this case are therefore directly adverse to its interests.

Because the original complaint did not name SEC, or any other existing legal entity, SEC filed a separate action in Pennsylvania seeking a declaratory judgment that its Accused Products did not infringe Murolet IP LLC's ("Murolet's") patents ("the Pennsylvania Action").  SEC filed a motion to dismiss, or in the alternative, to transfer this case in favor of the Pennsylvania Action, which is pending.  On November 2, 2020, Goldberg Segalla attorneys then appeared in the Pennsylvania Action to represent Murolet and moved to dismiss SEC's complaint.  Goldberg Segalla did not seek SEC's consent for these representations, and none was given.

Goldberg Segalla thus represents Murolet adverse to its current client SEC in two separate actions.  In this case, by its Amended Complaint, Goldberg Segalla sued SEC's corporate parent for patent infringement based on the sales of Accused Products that SEC markets in the United States.  Goldberg Segalla also represents Murolet directly adverse to SEC in the Pennsylvania Action.  By representing Murolet in litigation directly adverse to its client SEC, Goldberg Segalla violated the applicable rules of professional conduct, which preclude an attorney from representing one client directly adverse to another client, without informed consent.

When SEC's attorneys confronted Goldberg Segalla with this undeniable conflict, it waited over two weeks to respond. Then, after SEC moved to disqualify Goldberg Segalla in the Pennsylvania Action, Goldberg Segalla sent an email to SEC's counsel in which it unequivocally agreed to withdraw from the Pennsylvania Action. But Goldberg Segalla refused to withdraw from representing Murolet in this case even though it previously told this Court that "The Pennsylvania action mimics the Texas action in the entirety of its substance and subject matter." Instead, Goldberg Segalla argued that, because it omitted SEC from its complaints in this case and only sued SEC's foreign parent, it was free to continue the representation. That position is legally and ethically indefensible. The conflict here is clear and the Court should disqualify Goldberg Segalla from continuing to represent Murolet in this case.

## II.  FACTUAL BACKGROUND

### A.      SEC Is A Current Client Of Goldberg Segalla

There is no dispute that Goldberg Segalla established an attorney-client relationship with SEC over a year ago and that attorney-client relationship is ongoing. Nash Decl. Ex. 5 (Schultz Decl.) ¶¶ 2-6. Specifically, Goldberg Segalla attorneys Meghan Brown and Albert D'Aquino represent SEC in connection with a New York state court litigation titled *Baum v. Javen Construction Co, Inc*. *Id.* Ms. Brown and Mr. D'Aquino represented SEC initially regarding a trial subpoena, and thereafter to monitor the trial and act as lead counsel in the appeal. *Id.*; *see Baum v. Javen Construction Co, Inc.,* Dkt. No. 20-00584 (N.Y. Sup. Ct. 2020).

Even though SEC was not a named party in the *Baum* case, SEC was and remains involved in that case because of an indemnity agreement between Defendant Javen Construction and SEC. Nash Decl. Ex. 5 (Schultz Decl.) ¶ 4. As a result, SEC has directed all aspects of the litigation and all actions of its counsel, Goldberg Segalla*.* After the trial in the *Baum* case, Ms.

Brown represented SEC as its lead appellate counsel. *Id.* ¶¶ 5-6. As shown in Goldberg Segalla's billing records (Schultz Decl. Ex. 1), the File Reference number for the appeal is 14115.0001, the same matter number used for the trial subpoena and trial monitoring matters. Goldberg Segalla attorneys repeatedly discussed aspects of the *Baum* appeal with its client SEC. *Id.* ¶¶ 3-6. For example, page 29 of Exhibit 1 includes an entry on August 3, 2020 from Ms. Brown that states in part: "Draft correspondence to **client**, Matthew Schultz, Esq….." *Id.* (Schultz Decl. Ex. 1) at 29 (emphasis added). Mr. Schultz is an in-house litigation attorney at SEC and he received emails from Ms. Brown as recently as December 1, 2020 in connection with her representation of SEC in the *Baum* appeal. *Id.* ¶¶ 1, 6.

**B.     Goldberg Segalla Currently Represents Murolet Adverse To SEC In Multiple Actions**

While representing SEC in the *Baum* case, different Goldberg Segalla attorneys filed this patent infringement action on behalf of a non-existent party named Murolet LLC against a non-existent party named Schindler Group AG. ECF No. 1 (complaint). The complaint alleges that the Schindler 7000 elevator systems with PORT technology ("Accused Products") infringe five patents. *Id*. Knowing that SEC is the company that markets and sells the Accused Products in the United States, (Nash Decl. Ex. 6 (Todaro Decl.) ¶ 6), the same Goldberg Segalla attorneys amended the complaint to name Schindler Holding Ltd., the foreign parent holding company of SEC, as the defendant. ECF No. 11 (amended complaint). The Goldberg Segalla attorneys also filed a motion seeking leave to serve the complaint on SEC instead of then-named defendant Schindler Group AG. ECF No. 7.

After Murolet filed the original complaint in this case that did not name SEC or any other legal entity, SEC filed a declaratory judgment action against Murolet seeking a judgment of non-infringement by SEC's Accused Products with respect to the asserted patents. Nash Decl. Ex. 7

(Pennsylvania Action Complaint).  Despite its concurrent representation of SEC in New York state court, Goldberg Segalla attorneys made appearances in the Pennsylvania Action and moved to dismiss SEC's complaint alleging that, *inter alia*, that case substantially overlapped with this case.  *Id.* Ex. 8 (motion to dismiss Pennsylvania Action) at 12.  Goldberg Segalla attorneys have thus represented Murolet in both this action and the Pennsylvania Action adverse to its current client SEC, which is responsible for selling the Accused Products in the United States.  That adverse representation has been without SEC's written consent.  *Id*. Ex. 5 (Schultz Decl.) ¶ 7.

**C.      Goldberg Segalla Agrees To Withdraw From The Pennsylvania Action**

On December 3, 2020, SEC sent a letter to the Goldberg Segalla attorneys advising them of their violation of the ethical rules in Pennsylvania and Texas.  Cianfrani Decl. Ex. 1.  That letter demanded that Goldberg Segalla withdraw from all matters directly adverse to SEC and confirm that no confidential information of SEC had been disclosed to Murolet.  *Id.*  Having received no response, SEC followed up with another letter on December 14, 2020.  *Id.* Ex. 2.  Having received no substantive response[1] to this second letter, on December 18, 2020, SEC moved to disqualify SEC in the Pennsylvania Action.  Nash Decl. Ex. 9.  Later that evening, Mr. D'Aquino, on behalf of Goldberg Segalla, sent an email stating that Goldberg Segalla would withdraw from the Pennsylvania Action, but not this case.  Cianfrani Decl. Ex. 4.  Specifically, Mr. D'Aquino stated that because the complaint in this action did not directly name SEC, and only accused its corporate parent, Schindler Holding Ltd., of patent infringement, withdrawal was unnecessary in this case.  *Id.*  But that distinction is without a meaningful difference.  As a

---

[1] On December 14, 2020, Mr. D'Aquino sent an email to SEC's counsel stating that a responsive letter would be forthcoming.  Cianfrani Decl. Ex. 3.

result, SEC had no choice but to bring this motion to seek disqualification of the Goldberg Segalla firm.  Mr. D'Aquino's email stated that Goldberg Segalla would oppose this motion.  *Id.*

### III.  ARGUMENT

Goldberg Segalla's conduct in this case and the Pennsylvania Action is inconsistent and unfortunate.  But more importantly, its attempt  to continue representing Murolet despite an acknowledged conflict is improper. Goldberg Segalla concedes that it has a conflict and cannot continue to represent Murolet against SEC in Pennsylvania.  It then argues that it can continue to represent Murolet in this case because it strategically omitted SEC as a named defendant.  That position is not only legally incorrect, it is contrary to the very purpose of the ethical rules, particularly where it has previously argued that the two cases are the same "in the entirety of its substance and subject matter."  ECF No. 13 at 13.  Goldberg Segalla's strategic decision to omit SEC as a defendant in this case ignores that Murolet is seeking a judgment of infringement by Accused Products that Goldberg Segalla knows SEC is directly responsible for in the United States.  Thus, this action is directly adverse to SEC's interests even if SEC is not a named defendant.  Goldberg Segalla cannot avoid disqualification by targeting SEC's foreign corporate parent instead of SEC.

**A.     Legal Background**

Motions to disqualify counsel in Texas federal courts implicate federal law.  *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).  Accordingly, Texas federal courts are not limited to the state's ethical rules but also apply national norms of professional conduct, including the ABA Model Rules and the Model Code. *Id.*, 972 F.2d at 544; *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992); *Hillman Grp., Inc. v. KeyMe, LLC*, 439 F. Supp. 3d 845, 852 (E.D. Tex. 2020); *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2011 WL 13201855, at *4 (N.D. Tex. Sept. 12, 2011); *see also Picker Int'l, Inc. v.*

*Varian Assocs., Inc.*, 869 F.2d 578, 580–81 (Fed. Cir. 1989) (reviewing disqualification based on the standard of the respective circuit in patent cases).

In evaluating disqualification, courts must consider both the Texas Disciplinary Rules of Professional Conduct (the "Texas Rules"), as well as the ABA Model Rules of Professional Conduct. *Hillman*, 439 F. Supp. 3d at 852. Based on guidance from the Fifth Circuit, courts have adopted the narrower national standard from the ABA Model Rules. *Id.*; *see also Gen. Elec. Co.* 2011 WL 13201855, at *4 (citing *Dresser*, 972 F.2d at 545).

ABA Model Rule 1.7 states, in relevant part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; . . . .
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: . . .
>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
>> (4) each affected client gives informed consent.

Model Rules of Prof. Conduct 1.7. A party moving for disqualification of a firm based on a prohibited concurrent conflict of interest pursuant to Rule 1.7 must establish: (1) that the party is a client of the firm; and (2) that the firm's representation is directly adverse to it. *Rembrandt Techs., LP v. Comcast Corp.*, No. CIV.A. 2:05CV443, 2007 WL 470631, at *3 (E.D. Tex. Feb. 8, 2007).

The Fifth Circuit has allowed non-parties to seek disqualification where an attorney is actively representing two parties with adverse interests. *Domain Prot., LLC v. Sea Wasp, LLC*,

No. 4:18-CV-792, 2019 WL 6700955, at *2 (E.D. Tex. July 22, 2019) (citing *Brown & Williamson Tobacco Corp. v. Daniel Intern. Corp.*, 563 F.2d 671, 673 (5th Cir. 1977)); *see also Emmis Operating Co. v. CBS Radio, Inc.*, 480 F. Supp. 2d 1111, 1115-17 (S.D. Ind. 2007). Courts have granted non-parties' motions to disqualify. *See e.g.*, *Rembrandt*, 2007 WL 470631.

**B.     SEC Is An Existing Client Of Goldberg Segalla**

Goldberg Segalla does not dispute that SEC is its existing client. The D'Aquino email concedes that Goldberg Segalla cannot represent SEC adverse to Murolet and the firm has agreed to withdraw from the Pennsylvania Action for that reason. *See* Cianfrani Decl. Ex. 4. There is also no dispute that SEC did not consent to Goldberg Segalla's representation of Murolet adverse to it. Nash Decl. Ex. 5 (Schultz Decl.) ¶ 7. Thus, the only question is whether the patent infringement allegations in this case are directly adverse to SEC's interests.

**C.     Murolet Is Directly Adverse To SEC Even Though SEC Is Not A Named Party**

"Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." Model Rules of Prof Conduct 1.7, cmt 6. Murolet and SEC are directly adverse in this case in at least five ways:

(1) The Accused Products are marketed and sold by SEC in the United States. Nash Decl. Ex. 6 (Todaro Decl.) ¶ 6. Thus, any judgment with respect to those products will directly impact SEC;

(2) Goldberg Segalla has already agreed to withdraw from the Pennsylvania Action and previously argued that: "The Pennsylvania action mimics the Texas action in the entirety of its substance and subject matter." ECF No. 13 at 13; *see also id.* at 14 ("here, the [Pennsylvania Action and this action] are identical.");

(3)   Murolet's amended complaint in this case alleges that Defendant Schindler Holding Ltd. infringes the patents "through its subsidiaries" and SEC is the subsidiary responsible for marketing and sales of the Accused Products in the United States;  ECF No. 11 (amended complaint) at ¶ 7.  The amended complaint thus accuses SEC of infringement even though it is not a named party;

(4)  Murolet sought the Court's permission to serve the complaint in this case on SEC in lieu of serving its foreign parent, further implicating SEC. ECF No. 7;

(5)  Because SEC is responsible for marketing and sales of the Accused Products in the United States, it will inevitably need to be involved in discovery and as a witness at any trial in this case, whether as a party or as a third-party.

The foregoing shows that, although Goldberg Segalla chose not to name SEC as a defendant[2] in this case, the allegations in the amended complaint, the discovery involved, and the potential impact of a judgment if Murolet were to prevail with respect to the Accused Products, are all directly adverse to SEC's interests.  Goldberg Segalla cannot avoid that conflict by strategically omitting SEC as a defendant and suing only SEC's foreign corporate parent for the same allegedly infringing acts.

### D.   Disqualification Is The Appropriate Remedy

Goldberg Segalla admits that it cannot continue to represent Murolet directly adverse to SEC and thus agreed to withdraw from the Pennsylvania Action.  That is the only proper remedy here as well, where Murolet has argued that this case and the Pennsylvania Action are

---

[2] Murolet has even argued that SEC "should have" intervened in this case to protect its interests rather than filing a separate declaratory judgment action in Pennsylvania.  Nash Decl. Ex. 8 at 13 ("SEC brought its declaratory-judgment action only after learning of the Texas Case. It could, and should, have joined the Texas Case, but instead opted to file a new action in a different jurisdiction…."). That argument shows that even Murolet agrees that SEC's interests will be directly impacted by the outcome of this case.

substantively the same.  Lawyers should be disqualified when a court "find[s] that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." *Woods v. Covington Cty. Bank*, 537 F.2d 804, 813 n.12 (5th Cir. 1976).

Here, there can be no doubt as to the existence of an ongoing directly adverse conflict of interest, SEC did not delay the filing of this motion, and Murolet should be able to secure other counsel to prosecute this case from its early stage without undue delay. *Rembrandt*, 2007 WL 470631, at *4.  Nothing justifies allowing Goldberg Segalla attorneys to represent Murolet in this case directly adverse to its current client SEC.

## IV.  CONCLUSION

For the foregoing reasons, the Court should disqualify Goldberg Segalla from continuing to represent Murolet adverse to SEC's interests in this case.  That SEC is not a party in this case is immaterial because the amended complaint targets products that SEC is directly responsible for making, using, selling, offering to sell in, and/or importing into, the United States.

DATED: December 21, 2020   Respectfully submitted,

By: */s/ Brian C. Nash*
Brian C. Nash (TX Bar No. 24051103)
brian.nash@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITMAN LLP
401 Congress Avenue, Suite 1700
Austin, TX 78701
Tel: 512-580-9629
Fax: 512-580-9601

Jon W. Gurka (pro hac vice forthcoming)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Fax: (949) 760-9502

***Counsel for Non-Party Schindler Elevator Corporation***

-11-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above document has been served upon all counsel of record via the Court's ECF system on December 21, 2020.

*/s/ Brian C. Nash*
Brian C. Nash
